# In the United States Court of Federal Claims

No. 13-51X

(Filed: September 17, 2013)

| | | |
|---|---|---|
| ************************************* | * | |
| | * | |
| THOMAS CHARLES BEAR, et al., | * | |
| | * | |
| Claimants, | * | Congressional Reference Case; Rule 12(b)(1) Motion to Dismiss; Effect of Other Pending Cases; Legal v. Equitable Claims; Indian Canons of Construction. |
| | * | |
| v. | * | |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| ************************************* | * | |

*Nancie G. Marzulla* and *Roger J. Marzulla*, Marzulla Law, LLC, Washington, D.C., with whom were *Stephen R. Ward* and *John Williams*, Conner & Winters, LLP, Tulsa, Oklahoma, Of Counsel, for Claimants.

*Stephen R. Terrell*, with whom were *Ignacia S. Moreno*, Assistant Attorney General, U.S. Department of Justice, Environmental and Natural Resources Division, Washington, D.C., and *Shani Walker*, U.S. Department of Interior, Office of the Solicitor, Of Counsel, for Defendant.

OPINION AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

WHEELER, Hearing Officer.[1]

On May 10, 2013, in this Congressional Reference case, Defendant filed a motion to dismiss Claimants' complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Court. According to Defendant, when the House of Representatives referred this matter to the Court on December 19, 2012, it asked the Court to review "Indian trust-related legal or equitable claims" of the members of the Quapaw Tribe of

---

[1] Chief Judge Emily C. Hewitt designated Judge Thomas C. Wheeler as the Hearing Officer in this case on January 23, 2013.

Oklahoma "other than the legal claims that [were] pending in the Court of Federal Claims on the date of enactment of [the] resolution." Mot. to Dismiss 1 (citing H.R. Res. 668, 112th Cong. § 1 (2012)). Defendant cites two other breach-of-trust lawsuits filed by the Quapaw Tribe in this Court that were pending on December 19, 2012, Goodeagle v. United States, Fed. Cl. No. 12-431L (filed June 28, 2012), and Quapaw Tribe of Oklahoma v. United States, Fed. Cl. No. 12-529L (filed Sept. 11, 2012), and asserts that Claimants' complaint in this Congressional Reference case advances the same or similar causes of action as those encompassed in the other two cases. Id. Defendant thus argues that the complaint in this case violates House Resolution 668 by asserting legal claims "pending in the Court" on the date of enactment of the Resolution.

On June 17, 2013, Claimants filed an opposition to Defendant's motion, and on June 28, 2013, Defendant filed a reply. The Court heard oral argument on August 27, 2013, and the matter now is ready for decision. For the reasons explained below, Defendant's motion to dismiss is denied.

## Background

The individual Claimants in this case, all of whom are members of the Quapaw Tribe of Oklahoma (the O-Gah-Pah), first filed suit in this Court on January 5, 2011, in Grace M. Goodeagle v. United States, Fed. Cl. No. 11-9L. After the Government successfully argued that 28 U.S.C. § 1500 barred the claim during the pendency of Cobell v. Salazar, No. 96-CV-1285, 2011 WL 10676927 (D.D.C. July 27, 2011), aff'd, 679 F.3d 909 (D.C. Cir. 2012), cert. denied, 133 S. Ct. 543 (2012), Goodeagle restated and re-filed her complaint on June 28, 2012. The Tribe filed suit in its own behalf on September 11, 2012, in Quapaw Tribe, Fed. Cl. No. 12-529L. Both of these cases assert breach-of-trust legal claims against the Government under the Tucker Act, 28 U.S.C. § 1491, and Indian Tucker Act, 28 U.S.C. § 1505.

Instead of filing answers to these complaints, the Government filed motions to dismiss many of the claims. The Government argued that the claims were barred by the statute of limitations, or were claims for which the United States had not waived sovereign immunity. The Government also argued that it could not reasonably understand some of the claims stated in the complaints, and moved for a more definite statement of those claims.

On December 19, 2012, the U.S. House of Representatives passed House Resolution 668, referring to the Chief Judge of the U.S. Court of Federal Claims a bill, H.R. 5862, entitled "A Bill relating to members of the Quapaw Tribe of Oklahoma (O-Gah-Pah)." H.R. Res. 668, 112th Cong. § 1 (2012). Section 1 of the Resolution stated as follows:

> Pursuant to section 1492 of title 28, United States Code, the bill (H.R. 5862), entitled "A Bill relating to members of the Quapaw Tribe of Oklahoma (O-Gah-Pah)," now pending in the House of Representatives, is referred to the chief judge of the United States Court of Federal Claims for a determination as to whether the Tribe and its members have Indian trust-related legal or equitable claims against the United States other than the legal claims that are pending in the Court of Federal Claims on the date of enactment of this resolution.

Id. Section 2 of the Resolution contained the proceeding and report instructions to the Court upon receipt of the bill:

> Upon receipt of the bill, the chief judge shall—
>
> (1) proceed according to the provisions of sections 1492 and 2509 of title 28, United States Code, notwithstanding the bar of any statute of limitations; and
>
> (2) report back to the House of Representatives, at the earliest practicable date, providing—
>
>    (A) findings of fact and conclusions of law that are sufficient to inform the Congress of the nature, extent, and character of the Indian trust-related claims of the Quapaw Tribe of Oklahoma and its tribal members for compensation as legal or equitable claims against the United States other than the legal claims that are pending in the Court of Federal Claims on the date of enactment of this resolution; and
>
>    (B) the amount, if any, legally or equitably due from the United States to the claimants.

Id. § 2.

Some of the Congressional Representatives made floor statements in support of the Reference to this Court. The Chair of the House Judiciary Committee, Representative Lamar Smith, explained in his floor statement the purpose of the bill was to ensure that the Quapaw have a forum in which to present their breach-of-trust claims:

> Last year, eight Quapaw Tribe members filed a class-action lawsuit on behalf of themselves and other individuals for

> damages based on breach of trust. The government filed motions to dismiss and also refused to respond to a formal settlement demand proffered by the tribe.
>
> The government's foot-dragging necessitates our passage of House Resolution 668 today. The bill doesn't guarantee a desired outcome; it only allows the Quapaw a chance to go before the Federal Court of Claims and make their best case.

158 Cong. Rec. H7281 (daily ed. Dec. 19, 2012) (statement of Rep. Smith). Representative Smith also detailed the Tribe's efforts to obtain a remedy for their breach-of-trust claims:

> In 2002, the tribe filed a lawsuit for an accounting in Federal district court of the U.S. Government's mismanagement of tribal and tribal member trust assets.
>
> In November 2004, the tribe and the U.S. Government agreed that the tribe and third-party contractors would conduct an accounting of the U.S. Government's actions and inactions related to the trust assets. This was to facilitate a mediated solution to this lawsuit's claims. In exchange for this mediated route, the tribe would dismiss the lawsuit.
>
> In June 2010, after 5 years of accounting and related analysis, the Quapaw Analysis was completed and shared with the U.S. Government. This set the stage for mediation. That analysis confirmed that the government's mismanagement of the Quapaw's trust constituted a breach of trust.
>
> The tribe initiated multiple attempts to resolve their claims, which the government rejected. By 2011, the tribe sought relief in court from the government's failure to fulfill its trust obligations and to mediate and settle the trust claims.

Id. Representative Smith further explained in his floor statement that he anticipated this Court ultimately to issue a report to Congress on the claims:

> This bill allows a Native American Tribe that resides in Oklahoma, the Quapaw, to appear before the United States Federal [C]ourt of [C]laims to plead for damages against the Federal Government for mismanagement of tribal funds. The court would issue a report, either favorable or unfavorable[]

4

>to the tribe. If favorable, the Natural Resources Committee would be authorized to move separate legislation to effect the court's decision.

Id. Representative Tom Cole, one of the sponsors of the Congressional Reference bill, referred to the Quapaw's efforts to have an opportunity to present their breach-of-trust claims as the reason for the reference:

>This is a matter of justice. This is a bipartisan effort to try and make sure that an Indian nation that has a legitimate claim against the United States of America has an opportunity to go to court and make its case; no predetermination of the outcome, no settlement without coming back through Congress again, just simply an opportunity to make a case of an injustice that all sides admit occurred, and establish what's fair compensation.

Id. (statement of Rep. Cole). Representative Zoe Lofgren, also a supporter of the bill, stated that she had conferred with both the Department of Justice and the Department of the Interior, and both agencies had agreed that the Quapaw had legitimate claims against the Government:

>We have consulted with the Department of Justice and the Department of the Interior on this matter, and both agencies agree that the Quapaw Tribe has legitimate claims against the United States concerning certain tribal lands that were held in trust by the Federal Government. The only real dispute is the value of the claim.

Id. (statement of Rep. Lofgren). Representative Lofgren further stated that by referring H.R. 5862 to this Court, "the bill would authorize the court to determine whether the tribe and its members have trust-related legal or equitable claims against the U.S., other than legal claims that are currently pending before the court." Id. Representative Lofgren also stated that she believed referring H.R. 5862 to this Court for final resolution was an appropriate measure: "This procedure will help the Congress do the right thing, and that's why we're sent here, to do the right thing." Id.

Representative Dan Boren, in supporting H.R. Res. 668, directly addressed the question of the meaning of the Resolution's reference to pending claims:

>A question arises. If one or more of those currently pending legal claims are dismissed by the Court for lack of

> jurisdiction, would the dismissed claim be considered "pending" for purposes of this resolution?
>
> In my view, the answer is no. Our intention with the reference resolution is to request from the Chief Judge of the U.S. Court of Federal Claims a report containing findings of fact and conclusions of law concerning the nature, extent, and character of the Indian-trust related claims of the Quapaw Tribe of Oklahoma and its tribal members for compensation. As the language of the resolution suggests, these claims may be legal or equitable in nature, and exclude only the claims that are already within the jurisdiction of the Court of Federal Claims (including the statute of limitations) and are already pending in the Court of Federal Claims on the date of enactment. If a claim is dismissed as being outside the statute of limitations or for jurisdictional reasons, in my view, it was not pending on the date of enactment.

158 Cong. Rec. E1987 (daily ed. Dec. 21, 2012) (statement of Rep. Boren).

Claimants filed their complaint in this case on March 25, 2013. The Goodeagle and Quapaw cases also are pending before the undersigned after being transferred from other judges. On July 16, 2013, the Court issued rulings in each of those cases granting in part and denying in part the Government's respective motions to dismiss. Goodeagle v. United States, 111 Fed. Cl. 716 (2013); Quapaw Tribe of Okla. v. United States, 111 Fed. Cl. 725 (2013).

## Analysis

A. Standard of Review

Jurisdiction is a threshold matter which must be established "before the court may proceed with the merits." Overview Books, LLC v. United States, 72 Fed. Cl. 37, 40 (2006) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998)). When ruling on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the court must accept all undisputed factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). The burden lies with the plaintiff to establish jurisdiction through a preponderance of evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

B. <u>This Case Involves Equitable Claims, Not Legal Claims.</u>

1. <u>Equitable Claims Exist Where the Causes of Action are Outside the Court's Jurisdiction.</u>

In congressional reference cases, this Court's jurisdiction is based on 28 U.S.C. §§ 1492 and 2509. Section 2509(c) provides generally that the hearing officer shall make findings of fact and conclusions of law sufficient to inform Congress whether the claimants' demands constitute legal claims, equitable claims, or gratuities. In this case, House Resolution 668 defines those demands to include "Indian trust-related *legal or equitable claims*" of the members of the Quapaw Tribe of Oklahoma and to exclude only those "*legal claims* . . . pending in the Court of Federal Claims on [December 19, 2012]." H.R. 668 § 1 (emphases added). This distinction between legal and equitable claims is not accidental:

> [T]he term "legal claim," as used in congressional reference proceedings, has no special meaning. The term refers to a demand based upon a substantive right, the invasion of which is redressable at law. The term "equitable claim," however, has a particular meaning when used in congressional reference cases. In general, an equitable claim involves an injury, caused by the government, for which there is no enforceable legal remedy—due, for example, to the sovereign immunity bar or the running of the statute of limitations period.

<u>Bear Claw Tribe, Inc. v. United States</u>, 36 Fed. Cl. 181, 186 (1996) (citations omitted), <u>aff'd</u>, 37 Fed. Cl. 633 (1997). In other words, for a legal claim to exist, there must be a viable legal remedy, and where a claim is barred on statute of limitations or sovereign immunity grounds, it is not a legal claim. <u>J.L. Simmons Co., Inc. v. United States</u>, 60 Fed. Cl. 388, 394 (2004). In such circumstances, however, relief may still be possible on equitable grounds. <u>Kanehl v. United States</u>, 40 Fed. Cl. 762, 771 (1998).

Indeed, because the very purpose of considering equitable claims in congressional reference cases is to remedy wrongs for which there is no legal relief, such claims may be made notwithstanding the barriers imposed by statutes of limitations or sovereign immunity. <u>J.L. Simmons</u>, 60 Fed. Cl. at 394. Thus, in order to establish an equitable claim, a claimant must show only two things: "that 'the government committed a negligent or wrongful act' and that 'this act caused damage to the claimant.'" <u>Id.</u> (quoting <u>Cal. Canners & Growers Ass'n v. United States</u>, 9 Cl. Ct. 774, 785 (1986)).

2. <u>The Causes of Action Dismissed in the Goodeagle and Quapaw Rulings are Equitable Claims Because They are Barred by a Legal Principle.</u>

The complaint in this case states seven causes of action: (1) breach of trust regarding mining lands; (2) failure to properly lease and manage chat; (3) breach of trust regarding agricultural lands and town lots; (4) breach of trust regarding easements and rights-of-way; (5) failure to pay amounts due from judgment against the Government; (6) breach of trust: polluting soil and water, rendering them unsuitable for agricultural use, fishing and hunting; and (7) failure to make treaty payments of $1,000 per year. Compl. 10-40. The Government's argument is that all seven causes of action were legal claims pending in <u>Goodeagle</u> and <u>Quapaw</u> as of December 19, 2012, and therefore should be dismissed from this case for lack of subject matter jurisdiction. Mot. to Dismiss 7.  In making this argument, the Government focuses on the definition of the word "pending." Mot. to Dismiss 5.  However, as explained above, the focus should be on the distinction between the words "legal" and "equitable."

In <u>Goodeagle</u>, this Court dismissed three causes of action as untimely: failure to collect rents/payments for town lots, at least to the extent the claim meant to apply to more than losses under actual leases; failure to protect natural resources and failure to protect the environment; and failure to protect Quapaw Tribal Members and otherwise act in their best interests.  111 Fed. Cl. at 718.  Likewise, in <u>Quapaw</u>, the Court dismissed two causes of action as untimely: failure to collect or deposit payments for Tribal lands and failure to properly manage natural resources and Tribal lands, resulting in lost income.  111 Fed. Cl. at 727.  In other words, those claims were all barred by a legal principle—the applicable statutes of limitations—and, in the congressional reference context, cannot be described as "legal."  Therefore, according to the explicit language of House Resolution 668, those claims, at least to the extent they are "Indian trust-related," are not now excluded from the Court's consideration.

This, in fact, is the purpose of the claims in this case.  Absent the congressional reference, they would be outside the general six-year statute of limitations or the Indian Tucker Act's limited waiver of sovereign immunity, or both.  These are precisely the type of equitable claims referred to this Court by House Resolution 668.

C. <u>If Any Ambiguity Exists in H.R. Res. 668, it is Resolved in the Claimants' Favor Under the Indian Canons of Construction.</u>

Even if House Resolution 668 were subject to two possible interpretations, the choice between them would be dictated not by general principles of statutory construction, but by the canons of construction specifically applicable to Indian law. <u>Montana v. Blackfeet Tribe of Indians</u>, 471 U.S. 759, 766 (1985).  These canons are "rooted in the unique trust relationship" that exists between the United States government and Indian nations or tribes, <u>Oneida Cnty. v. Oneida Indian Nation of N.Y.</u>, 470 U.S. 226,

247 (1985), and therefore guide the Court's interpretation of a variety of Indian-related sources of law, including "the complex treaties, statutes, and contracts which define the status of Indian tribes." DeCoteau v. Dist. Cnty. Court for Tenth Judicial Dist., 420 U.S. 425, 447 (1975).  Moreover, they apply to individual Indians, as well as tribes. See, e.g., Squire v. Capoeman, 351 U.S. 1, 6 (1956).

In this instance, the relevant canon states that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." Blackfeet Tribe, 471 U.S. at 766.  Thus, even if there were some doubt as to scope of the referral to this Court, such doubt, rather than being resolved in favor of the United States, must be resolved in favor of the Quapaw Tribe. See Chickasaw Nation v. United States, 534 U.S. 84, 100 (2001) (quoting Choate v. Trapp, 224 U.S. 665, 675 (1912)).

   D. Congress Would Not Logically Refer a Bill to the Court Over Which the Court Lacks Jurisdiction.

In this case, resolving the issue of jurisdiction in favor of the Government would have the illogical result of preventing the Court from performing its assigned task.  When the House referred this matter to the Chief Judge of the U.S. Court of Federal Claims, its explicit instructions were to provide findings of fact and conclusions of law regarding claims for compensation "as legal *or equitable claims*." H.R. Res. 668 § 2 (emphasis added).  The language of this referral makes clear both that the Representatives were aware of the claims already pending before this Court and that they desired an investigation of those claims lacking a legal remedy.  To now conclude that the Court lacks jurisdiction to conduct such an investigation "would be to presume that Congress passed the bill in question merely to send plaintiffs to this forum for a . . . concomitant dismissal of their petition." Mizokami v. United States, 188 Ct. Cl. 736, 743 (1969).  This Court finds nothing justifying such a presumption.

## Conclusion

For the reasons set forth above, the Government's motion to dismiss is DENIED.  Pursuant to Rule 12(a)(4), the Government shall file its answer within fourteen days of this opinion, on or before October 1, 2013.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Hearing Officer