IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THOMAS CHARLES BEAR, *et al.*, ) | |
| ) | |
| Claimants, ) | No. 13-51X |
| ) | |
| v. ) | Hon. Thomas C. Wheeler |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**DEFENDANT'S MEMORANDUM IN SUPPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Many of Plaintiffs claims at issue in the *Bear* litigation are claims that have already been dismissed for one legal defect or another. However, under a congressional reference, the claims fare no better as equitable claims. It is clear from the way that Plaintiffs have disclosed the substance of their claims through their experts, that many of Plaintiffs' claims are not compensable in a congressional reference case because they would amount to a mere gratuity. In addition, Plaintiffs' claim for natural resource damages cannot be maintained as an equitable claim because Plaintiffs have an adequate legal remedy for the very claims they raise as equitable claims here. In addition, Plaintiffs' natural resource damages claim is not yet ripe. As a result, the United States is entitled to summary judgment on Plaintiffs' claims for agriculture losses, town lot losses, claims for mining and chat royalties on the Catholic 40 property, and for natural resource damages.

## II.   STANDARD OF REVIEW

The United States may move, at any time, for summary judgment on all or part of plaintiffs' claims. Rules of the United States Court of Federal Claims ("RCFC") 56(b). This Court may summarily adjudicate undisputed material facts, and determine liability on part of plaintiffs' claims, even if there remain other disputed issues for trial. RCFC 56(d). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see also Arko Exec. Servs., Inc. v. United States*, 553 F.3d 1375, 1378 (Fed. Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). By contrast, summary judgment is not appropriate where "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Thus, in reviewing a motion for summary judgment, the benefit of all factual inferences runs in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). "However, bald assertions and speculation do not create an evidentiary conflict sufficient to defeat a summary judgment motion." *Lathan Co., Inc. v. United States*, 20 Cl. Ct. 122, 125 (1990) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984)). The plain language of Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.     ARGUMENT**

    **A.     All of the Bear Plaintiffs' Claims Are Barred Because There Is No Legal Basis for the Claims and Any Recovery Would be a Mere Gratuity.**

"'An equitable claim on a Congressional reference must rest on some unjustified governmental act that caused damage to the claimants. Absent a finding of negligence [or wrongdoing] on the part of governmental employees, any award . . . would be a gratuity.'" *Banfi Products Corp. v. United States*, 40 Fed. Cl. 107, 121-22 (1997), aff'd as modified, 41 Fed. Cl. 581 (1998) (quoting *Spalding & Son, Inc. v. United States*, 28 Fed. Cl. 242, 250 (1993)). "Thus, an equitable claim, in comparison to a gratuity, must be grounded in positive law rather than in conscience, ethics or morals. *Id.* (citing *Menominee Indian Tribe of Wisconsin v. United States*, 39 Fed. Cl. 441, 457–58 (1997)). "[F]or the plaintiff to have an equitable claim against the Government, the Government must have had a duty to the plaintiff and must have breached that duty by committing a wrongful or negligent act that caused ... damage." *Menominee*, 39 Fed. Cl. 441, 457–58 (1997); *see also Spalding & Son, Inc. v. United States*, 28 Fed. Cl. at 250, 251 (finding that an equitable claim may only be sustained where an unjustified action by the government caused damages to plaintiffs).

This Court has already held that certain claims of both the Quapaw Tribe and Goodeagle plaintiffs are barred by the statute of limitations because they were trust asset mismanagement claims under the Federal Circuit's ruling in *Shoshone Indian Tribe v. United States*, 364 F.3d 1339 (Fed. Cir. 2004). *See Goodeagle v. United States*, 111 Fed. Cl. 716, 722 (2013); *Quapaw Tribe of Oklahoma v. United States*, 111 Fed. Cl. 725, 733 (2013). Those claims that were dismissed from the *Quapaw* and *Goodeagle* cases have now been made part of the *Bear* litigation. *See* ECF No. 4 (Complaint alleging breaches of trust regarding lead and zinc mining;

chat leasing and management; agricultural lands; town lots; easements and rights of way; contamination, and educational treaty payments).

In order to sustain their claims as equitable claims for purposes of the congressional reference, Plaintiffs must establish that the United States owed and breached a duty of care. In response to the Court's Rule 26 order on damages disclosure, Plaintiffs identified six general claims in Bear: Town Lot Leases, Agricultural Leases, Tar Creek Contamination, Catholic Forty, Industrial Park, and Losses from Failure to Collect Proper Royalties. Exhibit 1 (Plaintiffs' damages disclosure). Plaintiffs, however, do not identify a duty that the United States owes with respect to these six categories of claims. In the absence of such a duty, Plaintiffs' claims seek, in the nomenclature of congressional reference cases, a "mere gratuity." *Menominee*, 39 Fed. Cl. at 457–58 (1997).

### 1. Catholic Forty

Plaintiffs' failure to meet this burden is most striking with regard to the property referred to as the Catholic Mission Land, a 40-acre tract that is *currently* held in trust for the Tribe. *Quapaw Tribe v. United States*, 1:12-cv-00592, ECF No. 1, ¶ 18. The damages Plaintiffs seek are set forth in the Quapaw Analysis and described by Stephen Jay. That claim is premised on the notion that the United States should pay to the Tribe the mining royalties the Catholic Church received while the Catholic Church was the fee owner of the land. Exhibit 2 (Expert Report of Stephen Jay dated April 13, 2016) at 6. Similarly, Plaintiffs seek from the United States the chat-related payments the Catholic Church received for the sale of chat from the forty acres that the Catholic Church received while it was the fee owner of the land and the chat. *Id.* Finally, Plaintiffs seek to impose on the United States the costs they project as necessary toward bringing .56 acres of the Catholic forty, which .56 acres consists of a cemetery, into trust. *Id.* In addition,

Plaintiffs seek pre-judgment interest at the IIM pool rate for the chat and mining royalty payments.  *See* Exhibit 3 (Expert Report of Rocky Hill Advisors dated April 13, 2016) at 30-31.

The Tribe admits that the land was deeded to the Catholic Church in the 1890's as part of the allotment of the reservation.  Plaintiffs further acknowledge that the forty acres remained "in the Catholic Church's possession for some 80 years."  ECF No. 1, ¶ 18.; Exhibit 2 at 6.  By Plaintiffs' own admission, the United States did not hold the Catholic Church property in trust for Plaintiffs during the time that either the chat payments or mining royalties were paid to the Catholic Church.  Because the United States does not owe a trust obligation to the Tribe with respect to real property that is owned by a third party (here, the Catholic Church), Plaintiffs' claim as to the Catholic Church's mining royalties and chat-related receipts during its ownership is a "mere gratuity."  Similarly, because the United States does not possess a trust duty to fund the transfer of fee lands into trust status, Plaintiffs' demand that the United States fund a transfer of the half-acre cemetery into trust status is a "mere gratuity."  Plaintiffs cannot establish any duty that could give rise to an equitable claim.  Plaintiffs' allegations regarding the other categories of claims are similarly flawed – there is no legal duty that can serve to form the basis for a valid equitable congressional reference claim.

In addition, even if Plaintiffs could identify a valid duty of care that was owed (which they cannot), they have failed to identify the alleged breach that gives rise to an equitable congressional reference claim.  In order to establish a valid congressional reference claim, the plaintiffs must identify a "negligent or wrongful act" by the government that caused damage to Plaintiffs.  *Menominee*, 39 Fed. Cl. at 457–58 (1997).  Here, Plaintiffs have failed to do so.

### 2. Town Lots

Plaintiffs allege that the United States should pay for hypothetical town lot revenue based on the assumption that all town lots in the Slim Jim, Harry Crawfish, Humbawahtah Quapaw, and Sintahhahhah allotments were leased. Exhibit 2 at 10-11. But Plaintiffs offer no evidence that all town lots were leased or that all town lots were even occupied. The United States did not and does not possess a duty to ensure that all town lots are leased. The market, not the United States, determines the occupancy rate of town lots. In the absence of such a duty, Plaintiffs town lot claim is a "mere gratuity."

### 3. Agricultural Leases

Similar to their theory of recover with town lots, Plaintiffs allege that the United States should pay for the forgone rental fees that would have been paid had all the restricted allotments been leased for agriculture. Exhibit 2 at 9 (stating that agriculture losses were computed for thirteen individual allotments). What is more, Plaintiffs seek an overlapping rental fee for hunting leases on the same land that is leased for agricultural purposes during the same time periods. The flaw with Plaintiffs' theory is the same flaw that frustrates their town lot claim: the United States does not owe a duty to ensure that all agricultural lands are leased. Nor does the United States owe a duty to ensure that overlapping hunting leases are executed on top of the agricultural leases. Plaintiffs have not based their damages claim on specific instances of trespass nor instances of uncollected lease revenues. Accordingly, Plaintiffs' claim is one for a mere gratuity.

Plaintiffs have failed to identify the source of the duty necessary to sustain an equitable claim for purposes of the congressional reference claim. Accordingly the United States is entitled to summary judgment on Plaintiffs' claims relating to the Catholic Forty, Agricultural Losses and Town Lot Losses in the *Bear* case.

### B. Plaintiffs Cannot Prove An Equitable Claim for Natural Resources Damages Because They Have an Adequate Legal Remedy and Their Claims Are Not Ripe.

In congressional reference cases, "[t]he term 'equitable claim,'…has a particular meaning. *Bear Claw Tribe, Inc. v. United States*, 36 Fed. Cl. 181, 186 (1996), *aff'd,* 37 Fed. Cl. 633 (1997). "In general, an equitable claim involves an injury, caused by the government, for which there is no enforceable legal remedy—due, for example, to the sovereign immunity bar or the running of the statute of limitations period." *Id.* (citing *White Sands Ranchers of New Mexico v. United States*, 14 Cl. Ct. 559, 565 (1988)). The Bear Plaintiffs' have an adequate legal remedy to address their claims for natural resource damages through the Comprehensive Environmental Response Cleanup and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq*.

In fact, Plaintiffs have already brought the exact same claim for natural resources damages in the Northern District of Oklahoma. In *Quapaw Tribe of Oklahoma v. Blue Tee Corp.*, the Quapaw brought a claim under CERCLA for natural resource damages. No. 03-CV-0846-CVE-PJC, 2008 WL 2704482, at *10 (N.D. Okla. July 7, 2008). In that case, the Oklahoma district court held that the Tribe's claim for natural resource damages was not ripe. *Id.* at *13. "[Natural Resource Damages], even interim and lost use damages, cannot be fully measured until the EPA's remedial work is completed." *Alaska Sport Fishing Ass'n*, 34 F.3d 769, 772 (9th Cir. 1994) (NRD are based on the lost use from the time of release to complete restoration of the natural resources). The Oklahoma district court "independently researched the

issue" and found no authority supporting the Tribe's position that it could bring its claim for natural resource damages early. *Quapaw Tribe*, 2008 WL 2704482, at *13. As a result, the court held that "the Tribe's CERCLA claim is premature" and dismissed the claim without prejudice. *Id.* at *13, *22. The Tribe therefore has an adequate legal remedy, but it is simply not ripe yet. As a result, there is no equitable claim for purposes of the congressional reference in this case. The Tribe has a legal remedy to recover its natural resource damages, and no equitable claim lies against the United States in *Bear*. The United States is therefore entitled to summary judgment on the Plaintiffs' claims for natural resource damages.

## IV.   CONCLUSION

Plaintiffs cannot establish any of the necessary pre-requisites to bring an equitable congressional reference claim. Such claims must be grounded in a legal duty of care. Plaintiffs have not identified a duty of care sufficient to maintain their equitable congressional reference claims. In addition, the United States is entitled to summary judgment on Plaintiffs' claim for natural resource damages because Plaintiffs have an adequate legal remedy under CERCLA and that claim is not yet ripe. The United States respectfully requests that the Court grant judgment in favor of the United States on the claims in the Bear litigation for agriculture leasing losses, town lot leasing losses, claims for mining and chat roylaties on the Catholic 40 property, and for Plaintiffs' natural resource damages claims.

Respectfully submitted, July 15, 2016,

    JOHN C. CRUDEN
    Assistant Attorney General
    *s/ Brian M. Collins*
    BRIAN M. COLLINS

Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Tel:    (202) 305-0428
Fax:    (202) 305-0506
Brian.m.collins@usdoj.gov

Attorney for the United States

OF COUNSEL:

FRANK SINGER
KRYSTALYN KINSEL
GUILLERMO MONTERO
REBECCA JAFFE
United States Department of Justice
Environment and Natural Resources Division

KENNETH DALTON
SHANI N. WALKER
KAREN F. BOYD
United States Department of the Interior
Office of the Solicitor

THOMAS KEARNS
REBECCA SALTIEL
United States Department of the Treasury
Bureau of the Fiscal Service
Office of the Chief Counsel